IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SEABOARD HOTEL MEMBER ASSOCIATES, LLC, et al., | Case No. 15-12510 (LSS) |
| Post-Effective Date Plan Debtors. | (Jointly Administered) |
| NCA INVESTORS LIQUIDATING TRUST, | |
| Plaintiff, | |
| vs. | Adv. No. 17-51857 |
| TD BANK, N.A. | |
| Defendant. | |

## MEMORANDUM

TD Bank, N.A. ("Defendant" or "TD Bank") filed a motion to dismiss this adversary proceeding[1] ("Motion to Dismiss").[2] Briefing is complete[3] and I heard oral argument. For the reasons set forth below, I will grant the Motion to Dismiss, but give Plaintiff an opportunity to amend the Complaint.[4]

---

[1] All references to the Adversary Proceeding Docket will be cited as "D.I."
[2] Defendant TD Bank, N.A.'s Motion to Dismiss the Adversary Complaint, February 9, 2018, D.I. 10.
[3] Defendant TD Bank, N.A.'s Memorandum of Law in Support of Its Motion to Dismiss the Adversary Complaint, February 9, 2018, D.I. 11 ("Opening Brief"); Plaintiff's Memorandum of Law in Opposition to Defendant TD Bank, N.A.'s Motion to Dismiss, March 2, 2018, D.I. 20 ("Answering Brief"); Defendant TD Bank, N.A.'s Reply in Support of Motion to Dismiss the Adversary Complaint, March 16, 2018, D.I. 22 ("Reply Brief").
[4] Complaint by NCA Investors Liquidating Trust against TD Bank, N.A., December 8, 2017, D.I. 1.

**Background**

Plaintiff is a trust created pursuant to that certain Amended Chapter 11 Plan of

Liquidation filed in the jointly administered cases under the caption *In re Newbury Commons*

*Associates, LLC*, Case No. 15-12507. The trust may pursue claims for the benefit of the Plan

Debtors, which is a subset of the jointly administered debtors.

As recounted in the Complaint,[5] Debtors were limited liability companies created by

John J. DiMenna, Jr. ("DiMenna"), William A. Merritt, Jr. ("Merritt") and Thomas L.

Kelly, Jr. ("Kelly") to each hold a separate piece of real estate located in Connecticut.

DiMenna, Merritt and Kelly were also co-managing members of another entity, Seaboard

Realty LLC ("Seaboard"), which managed each of the Debtors and also held an equity

interest in many of the Debtors. More than 100 individual investors also held equity

interests in one or more of the Debtors.

More precisely, and as detailed and depicted in a schematic in the Complaint,

through various Debtor entities, DiMenna, Merritt and Kelly bought ten separate parcels of

developed real estate used for various commercial activities.[6] The investment vehicles

established for each parcel of real estate consisted (generally) of a holding company and a

wholly owned subsidiary. Seaboard and the individual investors held their equity interests

at the holding company level. The real estate was owned by the wholly owned subsidiary.

Plaintiff refers to each of these separate structures as a "silo."

---

[5] As required on a motion to dismiss the facts recited herein are taken from the Complaint. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A court is not required to make findings of fact or conclusions of law on a motion to dismiss under Fed. R. Civ. P. 12, made applicable by Fed. R. Bankr. P. 7012, and I make none. *See* Fed. R. Civ. P. 52(a)(3), made applicable by Fed. R. Bankr. P. 7052.

[6] The real estate included a Marriot Courtyard, a Marriot Residence Inn, several office buildings (some with retail space), a condominium building, and several apartment buildings.

Merritt's and Kelly's investment philosophy was that each investment was a stand-alone opportunity which depended on the performance of its real estate.  As such, investors invested in one or more specific properties, not in a portfolio of real estate.  Plaintiff alleges that each Debtor's operating agreement prohibited Seaboard (as the manager) from comingling investments and/or diverting money from one investment to fund operations of, or pay distributions to investors of, another investment.  If an investment was successful, its investors would receive a return on their investment; if it was not, they would not.

While Seaboard was the named manager of each Debtor entity, in reality, DiMenna, through his wholly owned entity, Seaboard Property Management, Inc., performed the day-to-day management functions.  Without the knowledge of Merritt, Kelly and the individual investors, "since 2012" DiMenna knew that many of the properties were not cash flow positive, and he began commingling funds among the investments and subsidizing disbursements from non-performing investments with revenue from performing investments.  Because of this "massive fraud," Debtors and their investors lost more than $70 million.[7]

Plaintiff asserts that TD Bank played a role in the massive fraud.  Plaintiff alleges that since at least 2008, Debtors used TD Bank as their main depository bank.  The relationship began when DiMenna's banker, Sten Sandlund ("Sandlund"), left his previous employer and joined TD Bank.[8]  DiMenna  and Sandlund had a "close relationship" and Plaintiff alleges (on information and belief)[9] that Sandlund "was aware that the investments

---

[7] DiMenna pled guilty to two counts of wire fraud and was awaiting sentencing at the time this matter was briefed.  Opening Brief 5 n.4.

[8] Sandlund left TD Bank for Israel Discount Bank in 2012.

[9] Pleading upon information and belief is circumstantially sufficient to satisfy federal notice pleading standards under Fed. R. Civ. P. 8(a), made applicable by Fed. R. Bankr. P. 7008.  *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The Twombly plausibility standard, which applies

were to be siloed." Mr. Sandlund left TD Bank in 2012, but Debtors retained their
depositary accounts at TD Bank.

DiMenna established an account at TD Bank in the name of Seaboard Consolidated,
LLC and used this account to transfer funds from one debtor entity to another. Seaboard
Consolidated was wholly owned by DiMenna and had no operations. Plaintiff alleges that
it was a mere conduit through which DiMenna ran his illegal operations. Funds would be
transferred from various debtor entities into the Seaboard Consolidated account and then
into the account of a debtor who had an immediate need for funds. Plaintiff alleges that
tens of millions of dollars flowed through the Seaboard Consolidated account "very
quickly." Plaintiff further alleges that (i) various Debtors frequently bounced checks or had
insufficient funds in their accounts; (ii) TD Bank was aware that Debtors were frequently
transferring funds among each other; (iii) accounts had a high volume of activity and carried
low balances, "a classic red flag for improper financial activity;" (iv) TD Bank permitted
DiMenna to frequently transfer funds between Debtors' accounts to cover overdrafts even
though it was clear each debtor was an individual company; (v) TD Bank was aware that
once deposits were made, the funds were frequently remitted elsewhere leaving only small
amounts in the accounts "another red flag" of improper financial activity; and (vi) TD Bank
was aware that Seaboard Consolidated did nothing more than pass money back and forth
among Debtors. Finally, Plaintiff alleges that TD Bank never froze any debtor accounts
"despite concerns over account activity."

---

to all civil actions, . . . does not prevent a plaintiff from pleading facts alleged 'upon information and
belief' where the facts are peculiarly within the possession and control of the defendant.") (citations
omitted; internal quotation marks omitted); *see generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

In November, 2015, Merritt and Kelly became aware that DiMenna had been

misrepresenting Debtors' operations and finances.  Ultimately, Merritt and Kelly caused

Debtors to file voluntary bankruptcy petitions over the period of December 13, 2015

through March 17, 2016.

## Jurisdiction

Subject matter jurisdiction exists over these adversary proceedings pursuant to 28

U.S.C. § 1334(b).  Plaintiff takes the position that this matter is either a core proceeding or a

non-core proceeding.[10]  Plaintiff further states that "at this time" it does not consent to my

entry of final orders or judgments if it is determined that the bankruptcy court cannot enter

final order or judgments consistent with the Constitution absent consent.  Defendant takes

no position on the nature of the action, and makes no statement regarding consent.

This matter is non-core.  In Count I of the Complaint, Plaintiff alleges that

Defendant was negligent in maintaining and overseeing Debtors' depository accounts.  In

Count II of the Complaint, Plaintiff alleges that Defendant aided and abetted the breach of

DiMenna's fiduciary duty by acting with reckless disregard toward the wrongdoing and by

providing substantial assistance to DiMenna.  In Count III of the Complaint, Plaintiff

alleges that Defendant violated the Connecticut Unfair Trade Practice Act ("CUTPA") by

allowing Seaboard Consolidated to carry out improper transactions.  Each Count states an

action under applicable state law and could have been brought even if the bankruptcy cases

had not been filed.  As such, absent consent, I cannot enter a final order or judgment in this

adversary proceeding.

---

[10] Complaint ¶ 2.

*The Relevant Standard*

In the Motion to Dismiss, brought under Rule 12(b)(6),[11] Defendant moves to dismiss Count I on three grounds: (i) Plaintiff failed to state a claim for negligence; (ii) Defendant has no duty to monitor depository accounts; and (iii) there is no private right of action based on banking procedures.[12] Next, Defendant moves to dismiss Count II of the Complaint because (i) Connecticut law does not recognize a cause of action for aiding and abetting breach of fiduciary duty as actionable and (ii) Plaintiff failed to plead the elements of the aiding and abetting breach of fiduciary duty claim. Lastly, Defendant moves to dismiss Count III of the Complaint because (i) Plaintiff merely recited the elements of a CUTPA violation and (ii) Plaintiff failed to plead an unfair or deceptive act as required under CUTPA. Thus, by the Motion to Dismiss, Defendant asserts that Plaintiff has failed to state a claim.[13]

My job on a Rule 12(b)(6) motion is to review the complaint to determine whether the plaintiff has adequately pled facts sufficient to show that the plaintiff "has a 'plausible claim for relief.'"[14] In reviewing the complaint under Rule 12(b)(6), the court must first accept all well-pled facts as true, but may disregard legal conclusions.[15] "A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that

---

[11] Fed. R. Civ. P. 12, made applicable by Fed. R. Bankr. P. 7012.

[12] Plaintiff is not advancing this argument so I need not discuss it.

[13] In the alternative, Defendant seeks to dismiss the Complaint pursuant to the doctrine of *in pari delicto*. Given my ruling, I need not address this defense now.

[14] *THQ Inc. v. Starcom Worldwide, Inc. (In re THQ, Inc.)*, No. 12–13398 (MFW), Adv. No. 14–51079 (MFW), 2016 WL 1599798, at *2 (Bankr. D. Del. Apr. 18, 2016); *see Iqbal*, 556 U.S. at 678 (although detailed factual allegations are not required, the complaint must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (citation omitted).

[15] *See In re THQ, Inc.*, 2016 WL 1599798, at *2.

the defendant is liable for the misconduct alleged."[16]  It is not sufficient to plead

"[t]hreadbare recitals of the elements of a cause of action[] supported by mere conclusory

statements . . . ."[17]  Rather, "a complaint . . .must contain either direct or inferential

allegations respecting all the material elements necessary to sustain recovery under some

viable legal theory."[18]  A court draws on "its judicial experience and common sense" to

determine if the complaint meets these requirements.[19]  The moving party has the burden.[20]

## Discussion[21]

### Count I: Negligence

Connecticut courts recognize that banks generally owe a duty of care to their

customers.[22]  The duty of care arises out of the contractual relationship between the bank

and its customer and applies to its transactions with its customer.[23]  So, for example,

Connecticut courts have found a bank to be negligent when it did not follow its policies and

procedures to verify that accounts were properly opened,[24] when a bank permits a

---

[16] *Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*, C.A. No. 14–874–SLR–SRF, 2015 WL 4036951, at *5 (D. Del. July 1, 2015) (citing *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56).
[17] *Iqbal*, 556 U.S. at 678.
[18] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).
[19] *In re THQ, Inc.*, 2016 WL 1599798, at *2 (quoting *Burtch v. Huston (In re USDigital, Inc.)*, 443 B.R. 22, 35 (Bankr. D. Del. 2011)).
[20] *In re THQ, Inc.*, 2016 WL 1599798, at *2.
[21] Both parties cite to Connecticut law as the applicable substantive law. Opening Brief 6 & n.4; Answering Brief 8. Accordingly, I will analyze the Complaint using Connecticut substantive law.
[22] *Red Law Firm, LLC v. Webster Bank*, 2014 WL 1011940 at *3 (Conn. Super. Feb. 7, 2014) ("Although our appellate courts have not yet ruled on this issue, judges of the Superior Court 'have . . . . recognized that banks generally owe a duty of care to their customers, regardless of whether a plaintiff asserts common law or statutory claims against a bank.'") (citing *Lester Construction, LLC v. People's United Bank*, 2009 WL 5698131 (Conn. Super. 2009)).
[23] *Id.*
[24] *Lester Constr., LLC v. Peoples United Bank*, at *3 ("[A]n interest holder in a corporation took delivery of checks made payable to the corporation and to the corporation's director, and opened an account in the name of the corporation at a local bank. . . . The interest holder then drew checks on the account.") (citations omitted).

withdrawal by someone who is not authorized to access the customer's account[25] or when a bank pays proceeds to an improper payee.[26] Here, Plaintiff does not assert a breach of the duty of care arising out of its contract with TD Bank nor does it assert that DiMenna was not authorized to make the alleged improper transfers.

Instead, Plaintiff asserts a common law claim of negligence, seeking damages for Defendant's negligent handling of Debtors' depository accounts. In response, Defendant asserts that a bank has no duty of care to monitor its customer's transactions and that Plaintiff is asking me to create a duty of care where none exists.[27] Plaintiff expressly concedes that a bank has no general duty to monitor activities in a depository account,"[28] but argues that Connecticut law provides that "banks must not ignore patently fraudulent conduct perpetrated by customers they know well."[29] Plaintiff asserts that "to state a claim for negligence against a bank concerning a deposit account, the plaintiff must set forth the traditional elements of negligence as well as allegations that there was some additional relationship between the bank and the depositor."[30]

---

[25] *Saint Bernard School v. Bank of America*, 95 A.3d 1063 (Conn. 2014).

[26] *Red Law Firm, LLC v. Webster Bank*, 2014 WL 1011940 at *5 ("[T]he four public policy factors discussed above support imposing a duty on a bank to take reasonable steps to determine that an instrument presented for payment is endorsed and that the individual presenting it is the named payee.").

[27] Opening Brief 7 citing *Frigon v. Enfield Sav. And Loan Ass'n*, 486 A.2d 630, 633 (Conn. 1985) ("The fact that a bank is indebted to its account holders for the amount of the funds that they have deposited imposes no special duty of care for the safekeeping of the funds on deposit.") (citations omitted).

[28] Answering Brief 12 n.8.

[29] *Id.* (further asserting that "had DiMenna been anyone else, there is virtually no chance that TDB would have allowed what occurred to have happened.").

[30] Answering Brief 8-9. Plaintiff is correct. *See e.g. St. Bernard Sch. of Montville, Inc. v. Bank of Am.*, 95 A3d 1063, 1078 (Conn. 2014) (examining whether "some special relationship other than a fiduciary relationship" existed between a bank and a depositor for purposes of determining whether a statute of limitations was tolled).

Plaintiff asserts that the following allegations in the Complaint establish that additional relationship:

- TD Bank was Debtors' main bank since 2008.  Complaint ¶ 28.

- Sandlund and DiMenna had a close relationship and Sandlund was aware that the investments were supposed to be "siloed."  Complaint ¶ 31.

Plaintiff argues that because of this relationship, TD Bank permitted funds to be improperly transferred between and among Debtor accounts through Seaboard Consolidated, ignored various "red flags" of improper account activity and deviated from normal banking procedures and protocols established to detect and stop illegal and improper activities.  At argument, Plaintiff further distilled its negligence argument.  Plaintiff asserted TD Bank permitted an unauthorized use of the funds in Debtors' accounts because Debtors' constituent documents prohibited Debtors from using revenue from one project to pay debts of another project.

Defendant contends that Plaintiff has not pled the "additional relationship" that must exist to state a claim of negligence against a bank.  As to Plaintiff's further argument that TD Bank permitted an unauthorized use of funds based on Debtors' constituent documents, Defendant contends that an unauthorized transaction cannot be based on the customer's internal documents, but only on the customer's contract with the bank.

Plaintiff cites *Murdock v. Croughwell* as the negligence standard to apply to TD Bank's conduct and the well-established elements of a negligence action: duty, breach of that duty, causation and damages.[31]  Within the concept of duty, there are two separate

---

[31] *Murdock v. Croughwell*, 848 A.2d 363, 367 (Conn. 2004) cited for the applicable standard page 8-9 of the Answering Brief.

considerations: the existence of the duty and the scope of the duty.[32]  Under Connecticut

law, the existence of a legal duty is a two-part analysis:

> [T]he test for existence of a legal duty of care entails: (i) a determination of
> whether an ordinary person in the defendant's position, knowing what the
> defendant knew or should have known, would anticipate that harm of the
> general nature of that suffered was likely to result, and (2) a determination, on
> the basis of a public policy analysis of whether the defendant's responsibility
> for its negligent conduct should extend to the particular consequences or
> particular plaintiff in the case.[33]

The existence of a legal duty is a question of law and is appropriately decided on a motion

to dismiss.[34]

   While citing the standard, neither party performed Connecticut's two-part analysis to

determine the existence of a duty.  I am guided in this analysis by the United States District

Court for the District of Connecticut's recent decision in *White v. Wells Fargo Bank*.[35]  In

*White v. Wells Fargo Bank*, the district court denied a pro se plaintiff's motion to amend her

complaint concluding that to do so would be futile because the underlying legal theories

were fundamentally flawed.  One of the plaintiff's theories was that Wells Fargo failed to

exercise reasonable care in the assessment of her request for a mortgage modification under

the Home Affordable Modification Program ("HAMP") regulations.  The district court

stated that there were no Connecticut Supreme Court or Appellate Court decisions

---

[32] *McDermott v. State*, 113 A.3d 419, 425 (Conn. 2015) (citing *LePage v. Horne*, 809 A.2d 505 (Conn. 2002)).

[33] *Murdock v. Croughwell*, 848 A.2d at 367; *Blanco v. Bank of America, N.A.*, 2016 WL 2729319, at *4 (Conn. Superior Court 2016).

[34] *Id.* ("duty is a legal conclusion about relationships between individuals, made after the fact . . . ."); *Blanco v. Bank of America, N.A.*, 2016 WL 2729319, at *4 (Conn. Superior Court 2016) ("The issue of whether the defendant owed the plaintiff a duty of care is an appropriate one for a motion to strike because the question embodies a matter of law to be decided by the court.") (citing *Bennett v. Connecticut Hospice, Inc.*, 741 A.2d 349 (Conn App. 1999), *cert. denied*, 747 A.2d 2 (2000)). A motion to strike is Connecticut's equivalent of a motion to dismiss.

[35] *White v. Wells Fargo Bank, N.A.*, 2019 WL 3334533 (D. Conn. July 25, 2019).

recognizing liability for a bank's failure to exercise reasonable care in denying a customer's

application to a non-mandatory program.  But, because the plaintiff alleged a duty of care as

a HAMP recipient, the court assessed Wells Fargo's duty under Connecticut's two-part test.

First, the district court analyzed whether the plaintiff's injury (foreclosure) was a

foreseeable result of Wells Fargo's denying her financial assistance through HAMP.  The

district court determined it was foreseeable that a party in Wells Fargo's position knowing

the plaintiff's financial information (or the information the bank should have known)

"would reasonably anticipate the general harm of a foreclosure action resulting from

denying a HAMP program application."  Accordingly, the district court concluded that the

plaintiff met the first part of the duty inquiry.

Second, the district court set out the four factors Connecticut courts examine to

determine whether public policy mandates that the defendant's negligent conduct should

extend to the particular consequences or particular plaintiff in the case: "(1) the normal

expectations of the participants in the activity under review;" (2) the public policy of

encouraging participation in the activity, while weighing the safety of the participants; (3)

the avoidance of increased litigation; and (4) the decisions of other jurisdictions."[36]  In turn,

the district court concluded that: (i) because there is no fiduciary relationship in a

borrower/lender relationship between a bank and its customer, there can be no normal

expectation that a consumer is entitled to enroll in HAMP or that a bank would be liable for

denying a HAMP application (weighing against the existence of a duty); (ii) there is a public

policy of encouraging consumers to participate in public assistance programs (weighing in

favor of the existence of a duty); (iii) recognizing personal liability for banks that deny

---

[36] *Murillo v. Seymour Ambulance Ass'n, Inc.*, 264 Conn. 474, 480 (2003).

HAMP applications would increase litigation (weighing against the existence of a duty); and (iv) while there were no helpful decisions from other jurisdictions, the "Connecticut Supreme Court has denied past attempts to create an amorphous duty of care from a contractual relationship" (weighing against the existence of a duty).  The district court concluded that while Wells Fargo could have foreseen the plaintiff's injury, Connecticut's public policy did not support imposing a duty of care on banks because of a denial of a customer's application to a non-mandatory program.  Accordingly, the district court held that the plaintiff did not plead sufficient facts to state a plausible claim for relief under *Twombly*.

In the present case, Connecticut's two-part analysis results in the same conclusion. As to the first prong, the injury sustained by Plaintiff due to TD Bank's alleged conduct is described by plaintiff as a massive fraud causing losses of more than $70 million.  Plaintiff argues that TD Bank knew the entities were "siloed" and thus they "had a basis for awareness of the intercompany transfers that effectuated the fraudulent scheme."  Plaintiff also contends that a pattern of improper transfers occurred which TD Bank ignored and which were obvious "red flags."

Under these circumstances, an ordinary person in TD Bank's position (i.e. a reasonable banker[37]), knowing what TD Bank is alleged to know, might believe that the transfers, which were properly authorized, were properly accounted for.[38]  But, I cannot rule out that a reasonable banker, knowing what TD Bank is alleged to know, might also

---

[37] *See e.g. Red Law Firm* at *4 (analyzing whether a "reasonable bank agent" would anticipate the alleged harm).
[38] The four pages of the Disclosure Statement attached to the Complaint and incorporated therein state that Debtors tracked the account activity and reflected the activity as intercompany loans in the aggregate as part of the entities' tax returns.

anticipate the harm alleged here—an illegal activity. While Defendant argued (and Plaintiff did not counter) that there is no private action based on internal policies and procedures or statutory requirements such as the Bank Secrecy Act, the existence of internal policies and procedures and statutory requirements designed to detect and expose suspicious activities suggests that a foreseeable harm of those suspicious activities is illegal conduct. Plaintiff, therefore, has met the foreseeability prong of the duty inquiry.

But, Plaintiff does not meet the second prong of the duty inquiry as I conclude that public policy does not support imposing a duty on TD Bank under the circumstances pled. The first factor is "the normal expectations of the participants in the activity under review." The activity under review here is TD Bank's actions or lack of action in monitoring its customers' depository accounts. Plaintiff has recognized that Connecticut courts do not generally impose a duty to monitor depository bank accounts. Further, the Connecticut Supreme Court has also recognized that a debtor/creditor relationship "does not impose any special duty of care for the safekeeping of the funds on deposit."[39]

Plaintiff urges me to find that the parties' relationship extended beyond a simple depository relationship because of the length of the depository relationship and because Sandlund knew that the investments were supposed to be siloed. Citing *Marino v. Bank of America*,[40] Plaintiff argues that allegations of a long banking relationship with "the bank act[ing] as an advisor or when the bank gains the confidence of the account holder" states a claim for negligence. Plaintiff further states that such allegations exist here. But, they do

---

[39] *Frigon v. Enfield Sav. and Loan Ass'n*, 486 A.2d 630, 633 (Conn. 1985) (dismissing claim of negligence in paying funds to a customer's duly appointed agent); *See MJZ Corp. v. Gulfstream First Bank & Trust, N.A.*, 420 So.2d 396, 397 (Fla. Dist. Ct. App. 1982) ("[T]the relationship between a bank and its depositing customer is contractual.").

[40] 2007 WL 2241755 (Conn Superior Ct. July 11, 2007). I should note that *Marino* addresses an allegation of a fiduciary duty between a bank and its customer as opposed to a claim of negligence.

13

not. Here, Plaintiff alleges nothing more than DiMenna knew Sandlund and they maintained a long banking relationship. There is no allegation that Sandlund or TD Bank acted as Debtors' advisor or gained Debtors' confidence. Rather, Plaintiff alleges nothing more than a traditional depository relationship. Other cases Plaintiff cites address unauthorized withdrawal, i.e. a breach of the contractual relationship between the customer and the bank.[41]

Plaintiff also likens the posture of this case to *Coquina v. TD Bank*[42] in which a trial court denied a motion to dismiss claims for fraud and aiding and abetting. In *Coquina*, the plaintiff brought an action against a bank alleging violation of the Racketeering Influenced and Corrupt Organization Act ("RICO"), conspiracy to violate RICO, fraudulent misrepresentation and aiding and abetting. The plaintiff alleged that several senior bank officers and employees actively participated in the illegal activity and assured victim-investors that their funds were restricted and "could not be transferred to anyone other than the victim-investors." The present case does not contain any of these type of allegations and the activity under review here is not active participation in a scheme with affirmative statements by a bank to investors. The first factor weighs against imposing a duty.

The second factor is the public policy of encouraging participation in the activity, while weighing the safety of the participants. Imposing a duty of care on a bank to monitor customer accounts to ensure safekeeping of funds in a traditional banking relationship may

---

[41] *Saint Bernard School v. Bank of America*, 95 A.3d 1063, 1075 (Conn. 2014) (while the trial court apparently entered a judgment based on negligence, as well as breach of contract and violations of Article 3 of the Uniform Commercial Code, the negligence finding was not on appeal); *Michael J. Fitzgerald Contracting Co., Inc. v. People's Bank*, 2002 WL 241303 (Conn. Super. Jan 30, 2002) (unauthorized withdrawal from checking account).
[42] *Coquina Investments v. Rothstein*, No. 10-60786-CIV, 2011 WL 197241, at *1 (S.D. Fla. Jan. 20, 2011).

discourage traditional services.  For example, here, Plaintiff argues that TD Bank should have taken steps to shut down transfers made by an authorized person because these transfers violated Debtors' operating agreements.  Requiring banks to review corporate governance documents, understand them, and ensure their customers do not violate them each time they go to the bank to handle their day to day business activities would substantially burden the relationship between banks and their customers.  Many customers may also view this as an unwarranted intrusion into their business affairs.  This factor weighs against imposing a duty.

The third factor is the avoidance of increased litigation.  Recognizing a duty to monitor simple depository accounts, and/or to know a customers' constituent documents and monitor for compliance with those documents will lead to an increase in litigation.  This is particularly so when, like here, transfers are made by an authorized person.  Such a duty would pose a significant burden on a bank; it would also constitute an unwarranted intrusion into a customers' business for a simple depository account relationship.[43]  Further, such a duty would undoubtedly lead to an increase of litigation as fraudulent schemes are invariably run through depository accounts.  This factor also weighs against imposing a duty.

The fourth factor looks to decisions from other jurisdictions.  Other jurisdictions appear to uniformly hold that banks do not have a duty of care to monitor their customer's accounts or to investigate suspicious activity.  For example, in *Wiand v. Wells Fargo Bank,*

---

[43] Compare *Freeman v. Dean Witter Reynolds, Inc.,* 865 So.2d 543, 549 (Fla. 2d DCA 2003) (concluding in the context of a claim for breach of fiduciary duty: "[w]e would radically alter the law of banking if we required banks to review credit card accounts and checking accounts to make certain that their customers were spending their money wisely.").

*N.A.*[44] a court appointed receiver for multiple hedge funds sued Wells Fargo for negligence in connection with a Ponzi scheme perpetrated by the hedge funds' manager. Two of the hedge funds were Wells Fargo customers. Additionally, Wells Fargo invested in two of the hedge funds, and loaned money to the manager after conducting due diligence. The receiver alleged that the manager frequently transferred large sums of money between accounts that triggered fraud alerts and generated reports in the bank's record-keeping system, and that the bank failed to follow its own internal procedures concerning money laundering as well as federal regulations. While the Florida standard for negligence is not exactly the same as Connecticut's, Florida courts recognize duties arising from statutes and regulations, judicial decisions and duties arising from the facts of a particular case. Florida courts also recognize a duty of care arises from "a foreseeable zone of risk arising from the acts of the defendant."[45] After examining all possible sources of a duty, the district court dismissed the negligence count concluding that Florida law does not impose a duty on a bank to investigate transactions made by authorized agents of an account holder.[46] It also concluded that violations of federal banking laws and regulations may be evidence of negligence, but cannot provide a duty of care.[47] Courts from other states concur.[48] This factor weighs against imposing a duty.

---

[44] *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316,1322 (M.D. Fla. 2015).

[45] *Id.* at 1323.

[46] *Id.* at 1322 citing *Lamm v. State Street Bank and Trust*, 749 F.3d 938, 948 n.7.

[47] The Court also noted that to the extent federal regulations impose duties on banks, the duties run to the United States, not the bank's customers. *Id.* at 1322.

[48] *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 463 Mass. 50, 54 (2012) ("A bank generally does not have a duty to investigate or inquire into the withdrawal of deposited funds by a person authorized to draw on the account to ensure that the funds are not being misappropriated."); *2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corporation*, 503 F. App'x 51, 53-54 (2d Cir. 2012) (declining to find Signature Bank negligent in setting up a trust account because "New York courts will not, 'as a matter of policy,' create a duty of care that essentially makes banks trustees of every trust with which they do business. . . . It is well settled that 'a depositary bank has no duty to

Taking all facts in the Complaint as true and drawing all reasonable inferences in favor of Plaintiff, I conclude that Plaintiff has not adequately pled negligence. While the harm alleged by Plaintiff may have been foreseeable, public policy does not support imposing a duty of care on banks to undertake investigations into corporate affairs of their customers with depository accounts.[49]

### Count II: Aiding and Abetting Breach of Fiduciary Duty

Plaintiff also sues Defendant for aiding and abetting DiMenna's breach of fiduciary duty. Defendant moves to dismiss this cause of action on two grounds: (i) the Connecticut Supreme Court does not recognize a claim for aiding and abetting breach of fiduciary duty and (ii) Plaintiff has failed to plead the requisite elements of an aiding and abetting claim.

As to the first argument, Defendant is wrong. Defendant relies on a Connecticut trial court decision in *Capone v. Katz*[50] to advance its argument that a claim for aiding and abetting breach of fiduciary duty in Connecticut is not actionable. While *Capone* does appear to stand for that proposition, the Connecticut Supreme Court case it cites for that proposition, *Flannery v. Singer Finance Co.*,[51] does not. In *Flannery*, the Connecticut Supreme

---

monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts from fiduciary misappropriation."); *Lawrence v. Bank of America, N.A.*, 455 F. App'x 904, 907 (11th Cir. 2012) ("finding that banks have the 'right to assume that individuals who have the legal authority to handle the entity's accounts do not misuse the entity's funds'") (quoting *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003); *In re Knox*, 64 N.Y.2d 434, 438 (Ct. of Appeals NY 1985) ("A bank is not in the normal course required to conduct an investigation to protect funds from possible misappropriation by a fiduciary . . . ."); *Fort v. Suntrust Bank*, 7:13-CV-1883-BHH, 2016 WL 4492898, at *8 (D.S.C Aug. 26, 2016) ("[T]here is no overarching duty between a bank and its customers.").

[49] To the extent Plaintiff seeks to recover on behalf of the investors, I am also skeptical that banks generally owe a duty to third parties (non-customers) under Connecticut law. *See Red Law Firm, LLC v. Webster Bank*, No. CV126029913S, 2013 WL 3766829, at *3 (Conn. Super. Ct. June 25, 2013); Opening Br. 9 n.6.

[50] 2017 WL 6601681, at *8 (Conn. Super. Nov. 22, 2017) (citing *Flannery v. Singer Finance Co.*, 94 A.3d 553, 560 n.12 (Conn. 2014)).

[51] 94 A.3d at 560 n.12.

Court recognized that it had not yet decided whether the issue of aiding and abetting breach of fiduciary duty is a viable cause of action and declined to do so once again.[52]  Accordingly, *Flannery* does not compel dismissal of Count II.  Rather, as the trial and appellate courts in *Flannery* did, I will proceed as if Connecticut would recognize the cause of action.

To establish a claim for aiding and abetting breach of fiduciary duty, a plaintiff must allege that: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation."[53]  Defendant does not dispute that the first element—breach of a fiduciary duty (by Mr. DiMenna)—has been met.

The parties disagree over the standard to be applied for the second and third elements.  As for the second element, Defendant argues that Plaintiff must plead sufficient facts to infer *actual* knowledge of a violation by the aider and abettor and not "general awareness" as Plaintiff argues.  Defendant relies on *Renner v. Chase Manhattan Bank, N.A.*[54] for this argument.  The court in *Renner,* however, interpreted New York law not Connecticut law.  Recent decisions interpreting Connecticut law show that Connecticut uses a "general awareness" standard for the requisite knowledge of the underlying breach of fiduciary duty.[55]

---

[52] *Id.* ("[T]he present case does not require us to decide whether aiding and abetting a breach of a fiduciary duty is a viable cause of action in Connecticut, and we decline to do so in dicta.").
[53] *Halo Tech Holdings, Inc. v. Cooper*, 2008 WL 877156, at *20 (D. Conn. Mar. 26, 2008) (quoting *Efthimiou v. Smith*, 268 Conn. 499, 505, 846 A.2d 222 (2004)).
[54] 85 F. App'x 782 (2d Cir. 2004).
[55] *See Carney v. Montes*, 2014 WL 671263 (D. Conn. 2014); *Learning Care Group, Inc. v. Armetta*, 2014 WL 12650852 (D. Conn. 2014); *Short v. Connecticut Community Bank, N.A.*, 2012 WL 1057302 (D. Conn. 2012).

*Second Element: Generally Aware*

In order to show that an aider and abettor was generally aware that he was part of tortious activity, a plaintiff must show that defendant has either "actual knowledge of the underlying tort or [that he] act[s] with reckless indifference to the possibility that the underlying tort is occurring."[56]

Plaintiff summarizes the following allegations for the proposition that TD Bank "knew or acted recklessly indifferent to the fact that, *inter alia*, DiMenna had established a money laundering operation (Seaboard Consolidated) within [TD Bank] accounts that fraudulently siphoned funds form the properties in which they were invested":

- In order facilitate the improper comingling of funds from one Debtor to another, DiMenna transferred funds from one Seaboard Entity's account to another through Seaboard Consolidated, LLC ("Seaboard Consolidated"), an entity wholly-owned by DiMenna. Seaboard Consolidated had no operations and was nothing more than a conduit through which DiMenna moved money. Funds would be transferred from various Debtors to Seaboard Consolidated and then into the account for another Seaboard Entity that had the immediate cash need. Complaint ¶ 33.

- Upon information and belief, DiMenna caused tens of millions of dollars to flow through the Seaboard Consolidated account very quickly. DiMenna would make these transfers in order to satisfy tax obligations, pay for operating and construction costs, pay trade debts, pay debt service, and/or make preferred dividend payments to investors. Complaint ¶ 34.

- Seaboard Consolidated was simply used as a pass-through to accomplish the transfer of funds to entities in need of cash. Complaint ¶ 35.

- At the time of the commencement of the Bankruptcy Case, virtually every Seaboard Entity had its primary bank account at TDB. Complaint ¶ 36.

- Upon information and belief, various Debtors frequently bounced checks or otherwise had insufficient funds in their accounts. Complaint ¶ 37.

- Upon information and belief, TDB was aware that Debtors were frequently transferring funds between and among each other. Accounts with a high volume of

---

[56] *Learning Care Group, Inc. v. Armetta*, 2014 WL 12650852 at *5 (D. Conn. 2014).

activity, which carry low balances, and are frequently overdrawn are a classic "red flag" for improper financial activity.  Complaint ¶ 38.

- Upon information and belief, TDB permitted DiMenna to frequently transfer funds between Debtors' accounts to cover overdrafts, even though it was clear that each Debtor was an individual company.  Complaint ¶ 39.

- Upon information and belief, TDB was also aware that once deposits were made, the funds were frequently remitted elsewhere, leaving only small amounts in the accounts, another "red flag" improper financial activity.  Complaint ¶ 40.

- Upon information and belief, TDB was aware that Seaboard Consolidated did nothing other than pass money back and forth among debtor entities.  Complaint ¶ 41.

- Upon information and belief, TDB knew or should have known of the above banking activity being conducted by Debtors but failed to take any steps to stop it.  Complaint ¶ 58.

- Upon information and belief, but for TDB ignoring and condoning the above conduct, the financial fraud described above could not have occurred. DiMenna required a compliant bank, such as TDB, to perpetrate his activity. Upon information and belief, TDB provided the services DiMenna requested.  Complaint ¶ 59.

Notwithstanding its characterization, Plaintiff does not truly assert that it has pled TD Bank had actual knowledge of DiMenna's breach of fiduciary duty.  Plaintiff states that "TD Bank may very well have had actual knowledge of DiMenna's fraud.  Sandlund was likely aware of DiMenna's conduct.  Discovery is needed to ascertain the exact contours of TD Bank's knowledge."[57]  This type of speculation does not meet the pleading standard for knowledge.  Suspicion about an illegal activity or constructive knowledge is insufficient to allege actual knowledge.[58]

---

[57] Answering Brief 16.
[58] *See Ryan v. Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL 1375265, at *8-9 (E.D.N.Y. Sept. 20, 2000); *In re Agape Lit.*, 773 F. Supp. 298, 307-08 (E.D.N.Y. 2011).

The question, then, is whether these allegations meet the standard of reckless indifference.  Plaintiff cites *Craig v. Driscoll*[59] for the proposition that recklessness "is a state of consciousness with reference to the consequences of one's acts. . . . The state of mind amounting to recklessness may be inferred from conduct.  But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them."[60]  *Craig v. Driscoll* involved a bartender who continued to serve alcohol to an obviously intoxicated patron who intended to operate a motor vehicle.  The Connecticut Supreme Court concluded that a complaint containing such allegations stated a claim for recklessness because such conduct "constitutes an extreme departure from ordinary care in a situation that involves a high degree of danger."[61]

Defendant cites to *Short v. Connecticut Community Bank* and *Stanley Ferber & Assoc. v. Northeast Bankcorp.,*[62] both of which discuss aiding and abetting liability in a commercial context.[63]  *Short v. Connecticut Community Bank* is one of many cases involving the Ponzi scheme perpetrated by Bernard Madoff.  Two investors bilked by Madoff held custodial accounts at Westport Community Bank (a division of Connecticut Community Bank) and

---

[59] 813 A.2d 1003 (Conn. 2003), *superseded by statute*, Conn. Gen. Stat. Ann. § 30-102 (West), *as recognized in O'Dell v. Kozee*, 307 Conn. 231, 265, 53 A.3d 178, 197 (2012) ("Finally, we must acknowledge that, shortly after our decision in *Craig*, the legislature effectively overruled our holding in that case by expressly abrogating the common-law negligence action that this court had recognized.").

[60] *Id.* at 1022.

[61] *Id.* at 1023.

[62] 1993 WL 489334 (Conn. Super. Nov. 16, 1993) (court grants defendant's motion to strike concluding that merger partner did not aid and abet target's board by agreeing to go forward with acquisition).

[63] Defendant also cites numerous cases which it describes as directly on point discussing aiding and abetting claims in the context of fraudulent schemes and bank defendants.  Reply Brief 8-9.  These cases do not apply Connecticut law.

sued the bank for aiding and abetting Madoff's fraud. The bank entered into custodial agreements with plaintiffs that required the bank to act as custodians with respect to plaintiff's funds deposited in the account and to invest the funds in an omnibus account maintained at Bernard L. Madoff Investment Services, Inc. ("BLMIS") The agreement provided that the bank acted only in a ministerial role and was not responsible for the investment strategy of the account. The bank was required to provide statements reflecting the property it held as a custodian, and it earned fees based on the average assets held. The lawsuit centered around whether the bank had a contractual or common law duty to verify the information reported by BLMIS and contained in the reports the bank sent to plaintiffs. The court granted summary judgment on the aiding and abetting claim against the bank concluding that there was no evidence that the bank had the requisite knowledge or was recklessly indifferent to the possibility of fraud. The evidence included that the bank failed to audit or verify BLMIS' reported assets, the bank promulgated inaccurate reports and the bank did not become suspicious when BLMIS refused the bank electronic access to its account and would not permit contact with it or the plaintiffs.

Here, the allegations of TD Bank's actions, or lack thereof, do not rise to the level of reckless indifference. I cannot infer from the allegations "something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them." Nor can I infer from the allegations that TD Bank's conduct was "an extreme departure from ordinary care." As discussed in connection with Plaintiff's allegations of negligence, a bank is under no duty to monitor its customer's depository accounts. Simply knowing that the investments were to be siloed is not enough to show recklessness even if one of many foreseeable consequences could be fraudulent

activity. Accordingly, Plaintiff failed to allege that Defendant was generally aware of DiMenna's breach of fiduciary duty.

### *Third Element: Substantial Assistance*

Even if I am wrong in concluding that Plaintiff has not pled reckless indifference, Plaintiff must still meet the third element of an aiding and abetting breach of fiduciary duty claim: substantial assistance. To plead substantial assistance, a plaintiff must come forward with allegations that "the assistance provided by the alleged aider and abettor was a substantial factor in bringing about the violation."[64] Connecticut courts have recognized that "the mere inaction" or "continued participation in a transaction" on the part of the defendant does not constitute substantial assistance.[65] In other words, the defendant must take some affirmative steps to further the breach of fiduciary duty.[66] An exception to this rule is when the defendant itself owes a fiduciary duty to the plaintiff.[67]

Plaintiff makes the following allegations in the Complaint in support of its argument that Defendant provided substantial assistance to DiMenna:

> (a) it was aware that accounts were regularly overdrawn, yet made no further inquiry concerning the reasons why, thereby fostering the opportunity for DiMenna to use Debtors to perpetrate the financial fraud described above,
>
> (b) it provided time for DiMenna to cover bounced checks and overdrawn accounts without making further inquiry, thereby affording DiMenna time to cover-up his misconduct,

---

[64] *Brunette v. Bristol Sav. Bank*, No. CV 92–0453957S, 1994 WL 468448, at *3 (Conn. Super. Aug. 22, 1994) (citing *Mendelsohn v. Capital Underwriters, Inc.*, 490 F. Supp. 1069, 1084 (N.D. Cal. 1979)).

[65] *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294-95 (2d Cir. 2006); *Halo Tech Holdings, Inc. v. Cooper*, 2008 WL 877156, at *21 (D. Conn. Mar. 26, 2008). *Ryan v. Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) ("The affirmative acts of opening the accounts, approving various transfers, and then closing the accounts on the basis of suspected fraud, without more, do not constitute substantial assistance.").

[66] *Lerner v. Fleet Bank, N.A.*, 459 F.3d at 294-95 ("'Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.'"); *Harris v. Wells*, 1991 WL 23535, at *3 (D. Conn. 1991).

[67] *Lerner v. Fleet Bank, N.A.*, 459 F.3d at 294-95.

(c) it allowed Debtors to maintain low balances relative to the amount of account activity without further inquiry,

(d) it allowed Debtors to rapidly receive and wire-out funds without further inquiry, thereby permitting DiMenna to shift funds between accounts of Debtors and cover-up the financial fraud described above,

(e) it allowed transfers between and/or among Debtors despite the purported separateness of their businesses, without further inquiry, thereby permitting DiMenna to shift funds among Debtors' accounts and cover-up the financial fraud described above, and

(f) it deviated from normal banking procedures and protocols established to detect and stop illegal and improper activities, thereby permitting DiMenna to cover-up the financial fraud described above.

Complaint ¶ 57. Defendant argues that the above allegations do not rise to the level that is required to show substantial assistance, and instead, they only show that Defendant provided routine professional services.

All of the allegations set forth above are passive in nature. TD Bank's action, or more accurately, its lack of action "provided time" and "allowed" DiMenna or Debtors to make improper transfers, and it "permitted" DiMenna to cover-up his fraud by not following banking procedures. At best, TD Bank's actions can be characterized as "mere inaction" or "continued participation" in a transaction, which does not amount to substantial assistance. Further, Plaintiff has not alleged that Defendant owed a fiduciary duty to Debtors that would have required Defendant to take action.[68] Thus, Plaintiff has failed to plead that Defendant provided substantial assistance to DiMenna.

---

[68] *See Cumis Ins. Soc., Inc. Windsor Bank & Trust Co.*, 736 F. Supp. 1226, 1234-35 (1990) (defendant's silence is insufficient to satisfy the "substantial assistance" prong in the absence of some special relationship that is fiduciary in nature).

***Count III: The CUTPA Claim***

Finally, in Count III of the Complaint, Plaintiff alleges that Defendant violated CUTPA by allowing DiMenna, through Seaboard Consolidated, to perpetrate fraud using Debtors' bank accounts. Defendant moves to dismiss Plaintiff's CUTPA claim on two grounds: (i) Plaintiff's pleading of boilerplate elements of the CUTPA claim is insufficient to withstand a motion to dismiss and (ii) Plaintiff failed to plead an unfair or deceptive[69] violation of CUTPA.

CUTPA regulates unfair or deceptive acts or practices taking place in Connecticut.[70] Section 42-110b of Unfair Trade Practices Act provides that "(a) [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[71] To plead a CUTPA claim, a plaintiff must allege: (1) ascertainable loss of money or property, (2) causation, and (3) an unfair method of competition or an unfair or deceptive act in the conduct of any trade or commerce.[72] Additionally, to survive a motion to dismiss, a plaintiff does not have to meet the heightened standard of Fed. R. Civ. P. 9(b).[73]

---

[69] Plaintiff is not arguing a deceptive act under CUTPA.

[70] CUTPA "gives honest businessmen great protection in [fighting] deceptive or unscrupulous competitors . . . who by unfair methods of competition and deceptive advertising, etc. unlawfully divert trade away from law abiding businessmen. *In re Trilegiant Corp.*, 11 F. Supp. 3d 132, 142 (D. Conn. 2014) (quoting 16 H.R. Proc., Pt. 14, 1973 Sess., p. 7323)).

[71] Conn. Gen. Stat. § 42–110b(a). *Boulevard Associates v. Sovereign Hotels*, 72 F.3d 1029, 1038 (1995).

[72] *Smith v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 91, 100 (D. Conn. 2016).

[73] *See Omega Engineering, Inc. v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1099 (D. Conn. 1995); *Van Dorsten v. Provident Life and Acc. Ins. Co.*, 554 F. Supp. 2d 285, 288-89 (D. Conn. 2008) (a formulaic recitations of the elements of a cause of action is not sufficient to survive a Rule 12(b)(6) motion to dismiss).

At the hearing on the Motion to Dismiss, Plaintiff conceded that if the claim for aiding and abetting is dismissed, the CUTPA claim will equally fail.  Given that I am dismissing Count II, the CUTPA claim does not warrant any further discussion.

**Leave to Amend**

In the conclusion section of the Answering Brief, Plaintiff urges me to grant leave to amend the Complaint should I see fit to dismiss it.  Plaintiff states that as a trust it was only recently formed when it filed the Complaint and was without sufficient time to cull through the thousands of pages of documents it inherited from Debtors.

Leave to amend is freely granted, "unless an amendment would be inequitable or futile."[74]  Given Plaintiff's circumstances, I do not find that curative amendments would be inequitable or necessarily futile.  Thus, I will grant the request for leave to amend the Complaint.  Plaintiff will have 30 days to file an amended complaint if it has learned facts sufficient to show a right to relief above the speculative level.[75]

**Conclusion**

An order will enter.

Dated: November 25, 2019

Laurie Selber Silverstein
United States Bankruptcy Judge

---

[74] *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002).

[75] *Twombly* at 1965 citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.").